(80 South. 582)

No. 23175.

STATE v. ALBERT MACKIE CO., Limited.

(Dec. 2, 1918. Rehearing Denied Jan. 6, 1919.)

*(Syllabus by Editorial Staff.)*

1. COMMERCE ⟨⟩40(1), 64—"INTERSTATE COMMERCE."

Selling of goods in one state consigned to a purchaser in another state is "interstate commerce," and the taxing of such sales by a state is an illegal interference with interstate commerce, even though the same tax be also imposed indiscriminately upon intrastate business.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. COMMERCE ⟨⟩64—INTERSTATE COMMERCE— LICENSE TAX.

The license tax imposed by Act No. 171 of 1898, §§ 6, 18, 29, graduating the tax upon a wholesale mercantile business according to amount of gross sales, as fixed by sections 18 and 29, cannot be supported as to sales in interstate commerce on theory that license tax is not in terms imposed upon interstate business, but is merely measured by volume of gross sales, including sales in interstate commerce.

3. COMMERCE ⟨⟩63—INTERSTATE COMMERCE— STATE TAX—VALIDITY.

A state tax that affects interstate commerce only incidentally and not directly, as a tax upon property used in such commerce, or a tax upon net incomes or profits derived from such commerce, or a fixed tax levied upon local business without discriminating against interstate commerce, is not repugnant to the commerce clause of the federal Constitution.

4. COMMERCE ⟨⟩64—INTERSTATE COMMERCE —STATE LICENSE TAX.

Act No. 171 of 1898, imposing a license tax upon a wholesale grocery business graduated under sections 6, 18, 29, according to amount of gross sales, could not be sustained as to sales in interstate commerce, on theory that tax was imposed not for privilege of carrying on interstate commerce, but for conducting the local business, and that amount of sales in interstate commerce was not taxed, but was merely included in measure of tax imposed upon local business.

5. COMMERCE ⟨⟩64—INTERSTATE COMMERCE— STATE LICENSE TAX.

Act No. 171 of 1898, imposing a license tax upon a wholesale grocery business graduated under sections 6, 18, 29, according to amount of gross sales, could not be sustained, as to sales in interstate commerce, on ground that tax was not graduated in exact proportion to amount of gross sales of business as it would be if a percentage of gross sales were charged, as tax is a burden on capital and business.

6. COMMERCE ⟨⟩64—INTERSTATE COMMERCE— STATE LICENSE TAX.

Act No. 171 of 1898, imposing a license tax on a wholesale local grocery business graduated under sections 6, 18, 29, according to the gross sales, cannot be sustained on the ground that the tax is not imposed upon sales made in interstate commerce because interstate sales are taken merely as part of standard of measure of tax charged for doing a local business.

7. STATUTES ⟨⟩64(8)—PARTIAL INVALIDITY— INTERSTATE COMMERCE—STATE LICENSE TAX.

Act No. 171 of 1898, imposing license tax upon a wholesale grocery business graduated under sections 6, 18, 29, according to amount of gross sales, where it is practicable to separate amount of gross sales within state from amount of gross sales in interstate commerce, is valid so far as imposed upon local business based only on amount of local sales, but invalid so

far as based or computed upon amount derived from sales in interstate commerce.

8. STATUTES ⚖➡64(8)—PARTIAL INVALIDITY—EFFECT.

Act No. 171 of 1898, §§ 6, 18, 29, imposing a license tax upon a wholesale grocery company, graduated according to its gross sales, though valid as to amount of gross sales made within state as a tax on a local business, is not thereby saved as to the part of tax invalid as including sales made in interstate commerce.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Suit by the State of Louisiana against the Albert Mackie Company, Limited. Judgment for defendant, and the State appeals. Affirmed.

C. C. Friedrichs, of New Orleans, for the State.

Wm. W. Westerfield, of New Orleans (Burt W. Henry, Howe, Fenner, Spencer & Cocke and Esmond Phelps, all of New Orleans, of counsel), for appellee.

O'NIELL, J. This suit was brought to collect a license tax levied by the state upon a wholesale mercantile business. The only question at issue is whether the tax demanded is in part imposed upon interstate commerce and foreign trade, contrary to the provisions of the federal Constitution, reserving to the Congress of the United States exclusive authority to regulate commerce with foreign nations and among the several states.

The tax collector demanded payment of $2,000; that is, the license tax required for a business in which the annual gross sales amounted to $5,500,000 or more and were less than $6,000,000. The defendant, subtracting from the amount of the gross sales of the year the amount of the interstate and foreign shipments, tendered $1,000; that is, the license tax required for a business of which the annual gross sales amounted to $4,000,000 or more and were less than $5,000,-000. Judgment was rendered in favor of the defendant, rejecting the tax collector's demand for more than $1,000, and he prosecutes this appeal.

The license tax in contest is for the year 1918; and, according to the terms of the statute, its amount is determined by the amount of the sales made during the preceding year. The statute levying a license tax upon every business, trade, profession or occupation is the Act No. 171 of 1898.

Article 229 of the Constitution of the state required the General Assembly to graduate license taxes, but did not suggest a method of graduation or impose any restriction in that respect. Accordingly the Legislature, by Act No. 171 of 1898, adopted what was deemed the most practicable method of graduating the license tax for each and every business, trade, profession, or occupation. In section 6 of the act, the license tax levied upon the wholesale mercantile business is graduated or measured by the amount of the gross sales per annum. The business is divided into 16 grades or classes, the first or highest being that in which the gross sales amount to $7,000,000 or more per annum, for which the license tax is $3,500, and the sixteenth or lowest grade being that in which the gross sales do not exceed $250,000 per annum, for which the license tax is $50.

The question before us, however, is whether the defendant's business belongs in the fourth or in the sixth class. The fourth class, on which the license tax is $2,000, is where the gross annual sales are $5,500,000 or more and less than $6,000,000. The sixth class, on which the license tax is $1,000, is where the gross annual sales are $4,000,000 or more and less than $5,000,000.

Other pertinent sections of the statute are the eighteenth and twenty-ninth, making provision for estimating the value of business by which the license tax is graded or measured; for it is payable in the beginning of the year for which the license is required, and

must be based upon a mere estimate of the volume of business to be done.

Section 18 declares that the annual receipts, sales, etc., referred to in the act as the basis for grading the license taxes, mean the receipts, sales, etc., of the year for which the license is granted, but that the standard for estimating the receipts, sales, etc., of that year shall be the receipts, sales, etc., of the preceding year if the business was conducted by the same party or by one to whom the licensee is the successor in business; and that, if the business be new, the estimate of the receipts, sales, etc., for the year shall be six times the amount of the receipts, sales, etc., of the first two months.

Section 29 of the act declares that all gross receipts derived from any mercantile business or occupation shall be the proper basis upon which license taxes shall be assessed and collected, whether earned within or without the state.

The defendant is a domestic corporation, engaged in the wholesale grocery business, having its domicile and business establishment, with its stock of merchandise, in the city of New Orleans. State and municipal taxes are assessed and paid regularly on all of the property of the corporation in New Orleans. The business of buying and selling groceries is done mainly within the state of Louisiana, but partly in other states and in foreign countries. The gross sales in the year 1917 amounted to $5,793,821.94, of which $4,039,945.80 was the amount of the sales of goods delivered within the state, $966,677.95 was the amount of the shipments into other states, and $787,198.19 the amount of shipments to foreign countries.

Some of the foreign and interstate shipments were on mail orders or telegraph orders received at the home office in New Orleans direct from the customers; other such shipments were made on orders taken and forwarded to the home office by traveling salesmen employed by the defendant. The negotiations with regard to all such sales began at the place to which the goods were to be shipped. The credit ratings of the customers were passed upon at the home office in New Orleans before the goods were shipped. All shipments to foreign countries and nearly all interstate shipments were on bills of lading attached to sight drafts, duplicate invoices being sent to the purchasers.

[1] It is argued on behalf of appellant that, as the delivery of the goods to the common carrier, in such cases, was a delivery to the consignee, the sales were completed in Louisiana, and were therefore intrastate commerce. The facts disclosed by the evidence do not justify that conclusion with regard to the shipments from Louisiana to other states or to foreign countries. The question to be decided does not depend upon whether the sales of the goods that were shipped from this state into another state were considered by the parties consummated by a delivery of the goods to the carrier in this state. It depends upon whether such transactions were intrastate or interstate commerce, as defined or understood by the commerce clause of the federal Constitution, reserving to the Congress of the United States exclusive legislative authority over interstate commerce, and forbidding the states to regulate or interfere with it. Of course, if a purchaser of goods in one state ships them to himself in another state, the buying of the goods is intrastate commerce, the only interstate commerce, in such case, being the shipment of the goods, the transaction had between the shipper and the carrier. But selling in one state goods consigned to a purchaser in another state is interstate commerce; and the taxing of such sales by a state is an illegal interference with interstate commerce, even though the same tax be also imposed indiscriminately upon intrastate business. See Kehrer v. Stewart, 197 U. S. 60, 25 Sup. Ct.

403, 49 L. Ed. 663, and the decisions there collected; Cooley on Taxation (3d Ed.) vol. 1, p. 161; Heyman v. Hays, 236 U. S. 178, 35 Sup. Ct. 403, 59 L. Ed. 527; Crew-Levick Co. v. Pennsylvania, 245 U. S. 292, 38 Sup. Ct. 126, 62 L. Ed. 295. The same rule, of course, applies to sales of goods shipped to foreign countries; because the states are forbidden, by paragraph 2 of section 10 of article 1 of the federal Constitution, to lay imposts or duties upon exports or imports.

[2] The main argument in support of the license tax in contest is that it is not imposed, in terms, upon the interstate or foreign business itself, but is merely measured by the volume of gross sales made—including exports and sales made in interstate commerce—during the year preceding that for which the license tax is demanded. To support the argument, the learned counsel for appellant refers us to the rulings in the following cases, viz.: Brown v. Houston, Tax Collector, 33 La. Ann. 843, 39 Am. Rep. 284; Nathan v. Louisiana, 8 How. (49 U. S.) 73, 12 L. Ed. 992; Maine v. Grand Trunk Railway Co., 142 U. S. 217, 12 Sup. Ct. 163, 35 L. Ed. 994; Ficklen v. Taxing District, 145 U. S. 1, 12 Sup. Ct. 810, 36 L. Ed. 601; Baltic Mining Co. v. Massachusetts, 231 U. S. 68, 34 Sup. Ct. 15, 58 L. Ed. 127; Armour & Co. v. Virginia, 246 U. S. 1, 38 Sup. Ct. 267, 62 L. Ed. 547; Cudahy Packing Co. v. Minnesota, 246 U. S. 450, 38 Sup. Ct. 373, 62 L. Ed. 827; Northwestern Mutual Life Ins. Co. v. Wisconsin, 247 U. S. 132, 38 Sup. Ct. 444, 62 L. Ed. 1025; United States Glue Co. v. Town of Oak Creek, 247 U. S. 321, 38 Sup. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748. Our interpretation of the decision in each of the cases cited follows.

The decision in Brown v. Houston, Tax Collector, 33 La. Ann. 843, 39 Am. Rep. 284; Id., 114 U. S. 622, 5 Sup. Ct. 1091, 29 L. Ed. 257, is not at all appropriate to the case before us, because the tax in contest in the case cited was not a license tax. It was a property tax, levied upon a quantity of coal within the state. The ruling was that the fact that the coal had been brought here from another state did not make the taxing of the property by this state after it arrived here an interference with interstate commerce. It was also held that a subsequent exporting of the coal did not make the tax levied upon it a duty on an export, the fact being that the coal was not intended for export when it was assessed for state taxes.

[3] Nathan v. Louisiana, 8 How. (49 U. S.) 73, 12 L. Ed. 992, is authority for the proposition that a state is not prohibited from levying a license tax upon a business or occupation such as that of a money or exchange broker, merely because the broker is engaged in selling only foreign bills of exchange. The license tax in that case was not graduated or measured by the volume of business done, but was a fixed tax upon every such business or occupation; hence, if it affected foreign commerce at all, it did so only incidentally, not directly. It is well settled that a state tax that affects interstate or foreign commerce only incidentally and not directly, as, for example, a tax upon property that is used in such commerce, or a tax upon net incomes or profits that have been derived from such commerce, or a fixed tax levied upon a local business without discriminating against interstate business, is not repugnant to the commerce clause of the federal Constitution (article 1, § 8). The important feature of the case before us that distinguishes it from the case cited is that the tax in question is graduated or measured, in part, by the volume of interstate and foreign business done, and is therefore a direct interference with, or regulation of, that commerce. The mandate in the state Constitution now prevailing, to graduate license taxes, does not and could not require an interference with interstate or foreign commerce.

In the case of Maine v. Grand Trunk Railway Co., 142 U. S. 217, 12 Sup. Ct. 121, 35 L. Ed. 994, the tax in question was an annual excise tax imposed upon every railroad company for the privilege of exercising its franchise within the state. The tax was graduated or measured according to the gross transportation receipts of the railroad within the state. But, with regard to railroads extending beyond the state line, the gross receipts of the railroad operated within the state were ascertained or estimated by multiplying the number of miles of road within the state by the average gross receipts per mile of the entire road extending within and without the state. That was not a tax upon the interstate transportation receipts. It was not even regulated or graduated or measured in proportion to the receipts from interstate transportation; because the average of receipts per mile of road extending beyond the state might have been more or less than the average receipts per mile of road within the state, without affecting the average receipts per mile of the entire road, which latter average was adopted merely as an estimate of, and was perhaps the only means of estimating, the average receipts per mile of road within the state. The tax, therefore, was not a burden upon, or a regulation of, the transportation business done outside of or beyond the state.

In Ficklen v. Taxing District, 145 U. S. 1, 12 Sup. Ct. 810, 36 L. Ed. 601, the license tax in contest, levied upon all factors or brokers for doing a local business, was not graduated on gross sales or receipts, but was a fixed tax of $50 per annum, plus an ad valorem tax of 10 cents on every $100 of capital invested or used in the business, provided that, where there was no capital invested, a charge of 2½ per cent. was levied on the gross yearly commissions, charges, or compensations. The fixed tax was not a direct burden upon any interstate commerce done by a factor or broker, nor was the ad valorem tax on capital located in the taxing district invalid. And the decision that the tax of 2½ per cent. on the gross yearly commissions, charges, or compensations was valid might be justified on the ground that the commissions, charges, or compensations received by the factor or broker were his net earnings or profits.

In Baltic Mining Co. v. Massachusetts, 231 U. S. 68, 34 Sup. Ct. 15, 58 L. Ed. 127, and in the companion case of S. S. White Dental Co. v. Massachusetts, 231 U. S. 68, 34 Sup. Ct. 15, 58 L. Ed. 127, the tax in contest was an excise tax on foreign corporations for the privilege of doing business in the state, being one-fiftieth of 1 per cent. of the par value of the capital stock, as shown by its annual certificate of its financial condition. The ruling was that the tax was not imposed upon the interstate commerce carried on by the licensee, notwithstanding the capital was, in part, derived from and employed in interstate commerce. The fact that the tax was imposed upon only foreign corporations was of no importance, because, as the court said, the right of a state to exclude a foreign corporation from its borders, or to prescribe the conditions on which a foreign corporation may do business in the state, does not permit a state to prescribe a condition that is violative of a mandate of the federal Constitution. The most serious contention of the Baltic Mining Company and of the S. S. White Dental Company (a contention not applicable to the case before us) was that the Massachusetts statute was an attempt to levy a tax upon property situated outside of the state. Answering the contention, the court said (three members, including the Chief Justice, dissenting) that the tax, being levied upon a legitimate subject of taxation, was not void because imposed upon property beyond the state's jurisdiction, for the property itself was not taxed, because,

in so far as the property was represented in the corporation's authorized capital stock, it was used only as a measure of taxation, and such a measure might be found in property or in the receipts from property not in themselves taxable. That doctrine was, in effect, if not in terms, overruled in the case of Looney v. Crane Co., 245 U. S. 178, 38 Sup. Ct. 85, 62 L. Ed. 230. And the opinion in the latter case was quoted with approval in International Paper Co. v. Massachusetts, 246 U. S. 135, 38 Sup. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617, decided on the 4th of March, 1918. In that case, the court had under consideration the same statute that had been held valid in the Baltic Mining Company's Case. In the meantime, however, the act had been amended in this respect, viz.: As originally enacted the statute limited the tax of one-fiftieth of 1 per cent. to $2,000. That meant that no tax was computed or charged on the excess of capital stock over $10,000,000. The amending or subsequent statute added a tax of a hundredth part of 1 per cent. on the excess of capital stock over $10,000,000, thus removing the maximum limit. The court held then that the first statute, as well as the amending act, was rendered invalid, not only because it was an attempt to tax property beyond the state, but also because it was an attempt to put a direct burden upon interstate commerce. The court quoted extensively from three cases (Western Union Tel. Co. v. Kansas, 216 U. S. 1, 30 Sup. Ct. 190, 54 L. Ed. 355, Pullman Co. v. Kansas, 216 U. S. 56, 30 Sup. Ct. 232, 54 L. Ed. 378, and Ludwig v. Western Union Tel. Co., 216 U. S. 146, 30 Sup. Ct. 280, 54 L. Ed. 423), saying that, although the business of the corporation in each of those cases was that of a common carrier, the immunity of interstate commerce from state taxation was not confined to what was done by the carriers in such commerce; that, on the contrary, it was universal, and extended to every class of interstate commerce, including that conducted by merchants and trading companies. The court then reverted and adhered to the doctrine of those decisions, and of the later case of Looney v. Crane, which could not be reconciled with much that was said in the Baltic Mining Company's Case.

In the case of Armour & Co. v. Virginia, 246 U. S. 1, 38 Sup. Ct. 267, 62 L. Ed. 547, the statute in question, levying an annual license tax upon every mercantile business, graduated by the amount of purchases made during the year, included in the purchases all goods, wares and merchandise manufactured by the merchant and sold or offered for sale in the state, but excluded from the operation of the statute all manufacturers who offered for sale at the place of manufacture goods, wares or merchandise manufactured by them, and who were taxed on their capital by the state. The contention of Armour & Co. was that the tax was a burden upon interstate commerce because of the disadvantage it imposed upon merchants who manufactured goods in another state and sold them in Virginia. The Chief Justice, for the court, rejecting the argument, said that, if the disadvantage complained of was real, not imaginary, it was not a direct consequence or an imposition of the statute itself, but a mere consequence of the situation of the persons and property affected. The effect of the statute upon interstate commerce, in other words, was only indirect, not controlling or regulative. For that reason the tax was held valid.

In Cudahy Packing Co. v. Minnesota, 246 U. S. 456, 38 Sup. Ct. 373, 62 L. Ed. 827, the tax in contest was a property tax, not a license tax. It is true the tax was based upon a percentage of the earnings of the corporation derived from operating its cars, engaged largely in interstate commerce. But the tax was justified because it was the only tax as-

sessed by the state on that particular property, and because its earnings, though largely in interstate commerce, were taken merely as the evidence or measure of the value of the property, and furnished a fair valuation, for the purpose of assessment. The tax in that case was indeed close to the distinguishing line between a direct and an indirect burden upon interstate commerce; but the reason for the decision, that the enactment was a lawful exercise of the state's authority to tax property within the state, is not applicable to the case before us.

In Northwestern Mutual Life Ins. Co. v. Wisconsin, 247 U. S. 132, 38 Sup. Ct. 444, 62 L. Ed. 1025, the tax in contest, though called a license tax, was, in effect, a commutation tax, charged for the privilege granted the corporation of doing business in the state, levied in lieu of other taxes on the personal property of the corporation within the state. The tax for each year was 3 per cent. of the gross income of the corporation for the preceding year, excepting, however, incomes from real estate on which the taxes assessed had been paid, and excepting also all premiums collected outside of the state on policies held by nonresidents. The contention of the plaintiff in that case was that the tax was imposed upon interstate commerce because the company's income was derived largely from investments in credits secured by mortgages on real estate situated in other states. It was observed, however, that those credits, being personal property, had their situs at the domicile of their owner, where they were subject to taxation by the state; and it was held that the tax in question was in reality a tax upon the property itself, not upon the business of investing in it. The court assumed only for the purpose of the ruling, but did not decide, that the investing of the capital of a corporation in securities in another state than that of its domicile was interstate commerce. It was

not contended that the life insurance business itself was commerce, within the meaning of the commerce clause of the federal Constitution, for that question, as the court observed, had been fully considered and disposed of in the case of New York Life Ins. Co. v. Deer Lodge County, 231 U. S. 495, 34 Sup. Ct. 167, 58 L. Ed. 332, where it was held that the life insurance business was not commerce. The reasons for which the Wisconsin tax was maintained against the Northwestern Mutual Life Insurance Company are not applicable to the case before us, because the tax in contest here was not—nor is there any contention that it was—levied upon the property of the defendant, or in lieu of other taxes.

In United States Glue Co. v. Town of Oak Creek, 247 U. S. 321, 38 Sup. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748, the tax in contest was levied upon the net income or profits earned by the corporation, not upon its gross receipts; and the ruling was that the tax was not invalid, as an interference with interstate commerce, to the extent that the net income or profit was earned in interstate commerce. The net income or profit earned by a person is his property, and a tax upon it, graduated in proportion to its value, is not a direct burden upon—because it has little or no deterring effect upon—the business or commerce from which the net income or profit is derived. The distinction between a direct burden upon commerce, such as results from a tax that is graduated in proportion to the gross receipts of a business, and an indirect burden, such as results from a tax that is graduated in proportion to the net income or profits of a business, was drawn very clearly in the discussion of the subject in the case last referred to. Tested by the rule there furnished, the tax in contest here, in so far as it is imposed upon or measured by the gross receipts from sales made in interstate or foreign commerce, is a

direct burden upon that commerce, and is therefore to that extent invalid.

[4] The fallacy of the argument that the license tax in contest is imposed or charged, not for the privilege of carrying on the interstate or foreign commerce, but for conducting the local business, and that the amount of the sales made in interstate and foreign business is not taxed, but is merely included in the measure of the tax imposed upon the local business, was announced in a very recent decision (International Paper Co. v. Massachusetts, 246 U. S. 135, 38 Sup. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617), when it was said, in laying down a number of pertinent general principles, that a state could not require a corporation—even a foreign corporation—engaged partly in interstate commerce to submit to a tax upon its interstate business as a condition of the right to do a local business. We had occasion lately to consider a similar question; that is, whether a taxing authority could legally include in the measure or standard by which a license tax levied for doing a local business was graduated the volume of business done outside of the territorial limits of the taxing authority. And we concluded that it could not. See City of Shreveport v. New York Life Insurance Co., 141 La. 360, 75 South. 80, citing with approval City of New Orleans v. Penn Mutual Life Insurance Co., 106 La. 31, 30 South. 254.

[5] It is argued on behalf of the appellant that the tax in contest is saved from invalidity by the fact that it is not graduated in exact proportion to the amount of the gross sales of the business, as it would be if a percentage of the gross sales were charged. In support of the argument the learned counsel for appellant refers us to the decision in General Railway Signal Co. v. Virginia, 246 U. S. 500, 38 Sup. Ct. 360, 62 L. Ed. 854, in which case, indeed, the ruling comes very near sustaining the argument. The tax in

144 LA.—12

contest in the case cited was levied upon foreign corporations as a condition of the privilege of doing business in the state. It was graduated 'in 12 grades, according to the amount of the corporation's capital stock, viz.: For a company whose capital stock was $50,000 or less the tax was $30; for one whose capital stock exceeded $50,000, but not $1,000,000, 60 cents for each $1,000 or fraction thereof; for one whose capital stock exceeded $1,000,000, but not $10,000,000, $1,-000; exceeding $10,000,000, but not $20,000,-000, $1,500, etc., the maximum tax being, for a corporation having a capital stock exceeding $90,000,000, $5,000. It was said, as a reason for declaring the tax valid, that the prescribed fees charged did not vary in direct proportion to capital stock, and that a maximum was fixed; that, in the class to which the plaintiff belonged (having a capital stock of $5,000,000), the amount of the tax specified was $1,000, and that the court could not say that that was wholly arbitrary or unreasonable. The complaint of the corporation was that the entrance fee or tax, being based upon the company's maximum capital stock, was a burden upon interstate commerce. The court held it was not. It does not appear to have been contended that the tax was invalid because of its being a tax upon property located in another state, having its situs at the domicile of the corporation; although it was said in the case of International Paper Co. v. Massachusetts (already referred to), quoting from three decisions:

"A license fee or excise of a given per cent. of the entire authorized capital of a foreign corporation doing both a local and interstate business in several states, although declared by the state imposing it to be merely a charge for the privilege of conducting a local business therein, is essentially and for every practical purpose a tax on the entire business of the corporation, including that which is interstate, and on its entire property, including that in other states; and this because the capital stock of the cor-

poration represents all of its business of every class and all its property wherever located."

We do not understand that a different rule shall apply if such a tax, instead of being graduated evenly and in exact proportion to the capital, like an incline, is graduated unevenly, like steps, a few thousand dollars apart. In either case, the tax varies according to the amount of the capital, and, for that reason in either case, the tax is a burden upon the capital. The court said, in deciding the General Railway Signal Company's Case, that it seemed proper to add that the case was on the border line. Whatever may be the purport of that decision, drawing a distinction between a tax that is graduated smoothly, as on a percentage basis, and one that is graduated in leaps and bounds, as it were, we do not believe that the Supreme Court of the United States would hold that a state license tax levied upon gross receipts from sales made in interstate commerce is valid if the tax be graduated—not exactly in proportion to the receipts, as it would be on a percentage basis—but none the less graduated so that the tax will be more or less according to whether the gross receipts run high or low, and have a maximum limit. Our opinion is that the license tax in contest, being measured or graduated as it is by the amount in dollars of the gross sales of a business, is as plain a burden upon the business itself as if it were a percentage of the amount of the gross sales in dollars and cents.

[6] The argument that this tax is not imposed upon the sales made in interstate or foreign commerce, because the interstate and foreign sales of one year are taken merely as a part of the standard of measure of the tax charged for doing a local business in the next following year, is the same as to say that, although a state cannot hamper interstate and foreign commerce by imposing a license tax for the privilege of carrying on the interstate and foreign commerce itself, the state may nevertheless levy the burden upon interstate and foreign commerce in the form of a license tax for the privilege of doing some other business, and may graduate the tax, either wholly or in part, in proportion to the volume of interstate and foreign business done. We do not read the law that way, and are not yet ready to write it so.

[7, 8] As it is practicable to separate the amount of the gross sales made within the state from the amount of the gross sales made in interstate and foreign commerce, the tax is valid in so far as it is imposed upon the local business, based only upon the amount of local sales. But in so far as the tax is based or computed upon the amount derived from sales made in interstate and foreign commerce it is an illegal interference with that commerce, and is therefore invalid. The validity of a part of the tax does not save the invalid part. See Leloup v. Port of Mobile, 127 U. S. 640, 8 Sup. Ct. 1380, 32 L. Ed. 311.

Having reviewed as many as our limited time will permit of the adjudged cases bearing upon the question, in our effort to make sure whether the tax in contest is on the one or the other side of the line between a direct and an indirect burden upon interstate commerce, we rest our conclusion upon two late and most pertinent decisions of the United States Supreme Court, viz., Heyman v. Hays, 236 U. S. 178, 35 Sup. Ct. 403, 59 L. Ed. 527, and Crew-Levick v. Pennsylvania, 245 U. S. 292, 38 Sup. Ct. 126, 62 L. Ed. 295, in which cases the facts were almost the same as in the case before us, and the principle upon which the tax was declared invalid is precisely the same.

The judgment is affirmed.