## STATE OF MAINE *vs.* BOSTON AND PORTLAND EXPRESS COMPANY.

### Cumberland.    Opinion June 23, 1905.

*Express Company.    Taxation.    Franchise Tax.    Determination of Valuation.*
*Rule Therefor.    Stat. 1880, c. 249, § 1.   Stat. 1891, c. 103, § 6.    R. S.*
*1883, c. 6, § § 55, 56, 57.    (R. S. 1903, c. 8, § § 42, 43, 44.)*

Under section 55, chap. 6, R. S. 1883, as amended, providing for the assessment of taxes upon express companies, it is *held:*

1. That the statute simply fixes the mode of determining the valuation upon which the tax is to be assessed.

2. That the tax therein prescribed is clearly a franchise tax and was so intended by the legislature.

3. That by the phraseology of the statute, the pro rata part of the gross receipts, to be used as a basis for taxation, should be found by a rule analogous to that employed in determining the gross receipts of railroads as the basis for the assessment of the railroad tax; that is, in the proportion that the number of miles of the express haul in the state bears to the whole number of miles of the route from which the entire gross receipts are derived.

4. If the " return under oath" made by the defendant company conforms with all the requirements of the statute, it cannot be arbitrarily disregarded by the state assessors in determining the amount of business done by the defendant.

On agreed statement.    Judgment for the state.

Action of debt brought by the state of Maine to recover from the defendant company two taxes assessed against the defendant company by the State Board of Assessors, one for the year ending April 1, 1898, and one for the year ending April 1, 1899.

The facts, so far as material, are stated in the opinion.

*George M. Seiders,* Attorney General, for the state.

*Symonds, Snow, Cook & Hutchinson,* for defendant.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, SPEAR, JJ.

SPEAR, J. This case comes up on the following agreed statement of facts.

(1) The Defendant, Boston and Portland Express Company is a corporation organized under the general laws of the State of Maine, and located at Portland in said state.

(2) The Defendant Company does no business between any two points in the State of Maine, but its whole business is between said Portland and the City of Boston, Massachusetts.

(3) The express business of the Defendant Company between said Portland and Boston is done principally upon Steamships running between said cities; occasional business, however, is done over the Boston and Maine Railroad between the same points.

There are several other items in the statement but it is unnecessary to quote them in full as they will be disposed of as they are reached in the opinion.

The question here raised is the legality of the tax assessed by the state against the Company for the years 1898 and 1899. The statutes under which the taxes in question were undertaken to be assessed and recovery sought by this suit, are as follows: Section 55, Chapter 6, R. S. 1883, as amended, provides; "Every Corporation, Company or person doing express business on any railroad, steamboat or vessel in the state, shall, annually, before the first day of May, apply to the treasurer of state for a license authorizing the carrying on of said business; and every such corporation, company or person shall annually pay to the treasurer of state, one and one-half per cent of the gross receipts of said business for the year ending on the first day of April preceding. Said one and one-half per cent shall be on all of said business done in the state, including a pro rata part on all express business coming from other states or countries into this state, and on all going from this state to other states or countries, provided, however, that nothing herein applies to goods or merchandise in transit through the state."

Section 56, as amended, requires the corporation, by its properly

authorized agent or officer, annually, on the 15th day of May, to make a return under oath to the state assessors, stating the amount of said receipts for all express matter carried within the state, as specified in the preceding section, and upon this return the assessors are to assess the tax therein provided.

Section 57 as amended, provides "that the tax assessed upon express corporations, companies and persons, as aforesaid, is in place of all local taxation," and then further provides that the tax upon all real estate owned by such corporation, taxed by the municipality in which the same is situated, shall be deducted by the state assessors from the tax herein provided. We have but little doubt that the legislature intended that the payment required of express companies should be considered as an excise or franchise tax. The rules that govern such a taxation were raised and fully discussed in *State* v. *M. C. R. R. Co.*, 74 Maine, 376 in 1883. The statute, Chapter 249, section 1, laws 1880, construed in this case was as follows: "It shall be the duty of the governor and council, between the first day of April and the first day of May in each year, to appraise the several railroads in the state, with their franchises, rolling stock and fixtures, at their cash value, and upon this valuation to levy a tax of one per centum so as to make said tax equal as near as may be to the taxes of all kinds upon other property, through which said roads may extend. " This statute does not pretend to give a name to the tax imposed by it. It simply states the way of determining the valuation upon which the tax is to be assessed. But Mr. Justice Walton, who drew the opinion says: " We think it is clearly a franchise tax and was so intended by the legislature . . . . "Possessing the power to impose a franchise tax to any amount it deems proper, the legislature may measure the amount by any standard it pleases. It may fix the amount at a specified sum, as a poll tax is imposed upon an individual, and without regard to the amount of business the corporation does, or the amount of property it possesses, or it may graduate and measure the amount by an appraisal of the whole or any portion of its property, or by the amount of its business. "

*Maine* v. *Grand Trunk Railway Co.*, 142 U. S. 217, decided in 1891, involved the construction of our statute relating to the taxation

of railroads, which was substantially as it is now, and denominated the tax as an excise tax. As a mode of ascertaining the amount of this tax, the laws of 1881 provided that if the road was wholly within the state the average gross receipts per mile should be made the basis of the assessment. If the road was partly within and partly without the state, then the average gross receipts per mile of the whole line operated multiplied by the number of miles operated within the state, were made the basis.

In this case precisely the same objection was invoked against the constitutionality of the statute that is now raised in the case at bar, namely, that it was an infringement of the rights of interstate commerce. Mr. Justice Field after having fully upheld the power of the state to impose a franchise tax in any manner and to any extent which it saw fit, on page 228 of the case, defined the contention of the defendant and stated the conclusion of the court thereupon as follows: "The court below held that the imposition of the taxes was a regulation of commerce, interstate and foreign, and therefore, in conflict with the exclusive power of congress in that respect; and on that ground alone it ordered judgment for the defendant. The ruling was founded upon the assumption that a reference by the statute to the transportation receipts, and to a certain percentage of the same in determining the amount of the excise tax, was in effect the imposition of the tax upon such receipts, and therefore an interference with interstate and foreign commerce. But a resort to those receipts was simply to ascertain the value of the business done by the corporation, and thus obtain a guide to a reasonable conclusion as, to the amount ·of the excise tax which should be levied; and we are unable to perceive in that resort any interference with transportation, domestic or foreign, over the road of the railroad company, or any regulation of commerce which consists in such transportation. If the amount ascertained were specifically imposed as the tax, no objections as to its validity would be pretended." He also distinguished the case of *Philadelphia Steamship Co.* v. *Pennsylvania,* 122 U. S. 326, relied upon by the defendants in this case, and asserts that it "in no way conflicts with this decision."

*Home Insurance Company* v. *New York*, 134 U. S. 594, is another case in point, involving a franchise tax in which the court lay down this principle with respect to the manner of assessing the tax. "The validity of the tax can in no way be dependent upon the mode which the state may deem fit to adopt in fixing the amount for any year which it will exact for a franchise. No constitutional objection lies in the way of the legislative body prescribing any mode of measurement to determine the amount it will charge for the privileges it bestows." We think that the statute involved in the case at bar is analogous in principle to the one construed in *State* v. *Grand Trunk Ry.*, and, like the insurance case, prescribed only the mode by which the state undertook to fix the standard upon which it was disposed to impose a franchise tax upon the defendant company. An analysis of the statute by the process of exclusion also tends to establish the fact that it was intended to provide for a franchise tax. Otherwise as it will appear it imposed no tax at all and the whole statute became inoperative and void.

It certainly did not impose a tax upon real or personal property, as the tax prescribed "is in place of all local taxation," and the state tax assessed upon real estate is also deducted, thus leaving no state tax upon any tangible property; nor upon any goods or articles transported by the company; nor is it a license tax, as that is provided for in another section of the statute; nor a tax upon the receipts of the company as such, but upon "the business done in the state;" the very ground upon which a franchise tax may be imposed, as stated by Mr. Justice Walton, supra, and in the Grand Trunk and the insurance cases above cited. A fair construction of the statute under the decisions above referred to fully excludes all the elements of any other tax than those of an excise or franchise tax, and clearly shows that it was the intention of the legislature to impose such a tax and no other. And it is apparent that this tax is a franchise tax or no tax. Another important reason for concluding that it was the intention of the legislature to impose an excise or franchise tax is found in the fact that they are not only presumed to have had knowledge of the rights of interstate commerce with respect to the matter of taxation, but that they gave actual expression

to such knowledge by excluding from the operation of the law the subject matter of interstate commerce by a proviso "that nothing herein applies to goods or merchandise in transit through the state," and by confining the tax provided for solely to the business done in the state.

This brings us to the second proposition involved in the case, and that is the rule for determining the amount of express business done in this state upon which the tax should be assessed. And it should be here observed that all the business done by the defendant is interstate. The statute provides "that said one and one-half per cent shall be on all business done in the state including a pro rata part on all express business coming from other states or countries into this state, and on all going from this state to other states or countries." Under this clause the defendant contends, assuming that the state could legally impose the tax in question, that it could only be upon the theory that the tax was upon earnings in the state of Maine alone, and that such proportion of earnings could only be determined by a pro rating according to the miles of haul within and without the state. In other words, that the tax could only be upon such proportion of the gross earnings of the company as the miles of haul within the state bears to the whole haul for which the receipts are had. On the other hand, the state contends that the pro rating is not to be made by any fixed standard but is to be determined wholly upon an equitable division of the gross receipts from business carried on between this and other jurisdictions. Upon this point we think the defendant's contention must be sustained.

In *Brombacher* v. *Berking*, 56 N. J. Eq. 253, it is said, "pro rating means according to the measure which fixes proportions. It has no meaning unless referable to some rule or standard." We fail to see how the equity method suggested by the state could be referable to any standard.

Under our statute it will be seen that the state assessors are to do the pro rating, and assess the tax upon the return made by the company. Hence, if the contention is right, it must be left to their judgment to determine the standard upon which should be made an equitable division of the business done within and without the state. If

this be true, the standard would simply be the arbitary will of the board of state assessors. By a change in the personnel or in the minds of the board, a new standard might be fixed from year to year. But such a rule as this could not have been contemplated by the legislature. If they had intended to establish such a method of pro rating, they would have made their purpose clear. We have no doubt that they intended by the phraseology of the statute that the pro rata part of the gross receipts, to be used as a basis for taxation, should be found by a rule analogous to that employed in determining the gross receipts of railroads as the basis for the assessment of the railroad tax; that is, in the proportion that the number of miles of the express haul in the state bears to the whole number of miles of the route from which the entire gross receipts are derived. Although the legislature as we have seen could have prescribed any standard they might have deemed proper for the assessment of an excise tax, yet having established one the state assessors must abide by it.

Another question raised in the case is whether the express company or the state assessors shall determine the validity of the return upon which the tax is to be assessed. The statute upon this point appears to be clear and unambiguous. Section 56, as amended, provided for a return under oath by the defendant and that upon this return the state assessors should assess the tax provided for. Section 58 fixed a forfeiture of $25.00 for every day's neglect to make the return as required by section 55. Section 68, in case of failure on the part of an express company to make the return required by the other sections of the statute, authorized the governor and council to make an assessment of the tax upon such company "on such valuation or such gross receipts thereof," as they might think just. This authority by virtue of section 6 chapter 103 of the laws of 1891 was conferred upon the state assessors. This latter section is the only one which authorizes the state assessors to assess a tax upon any basis except that of the "return under oath" made by the defendant company. And such return, if it conforms with all the requirements of the statute, as it is conceded to have done in this case, cannot be arbitrarily disregarded by the state assessors in determining the amount of business done by the defendant company in

this state. ⁻ Otherwise, the assessors would, if they saw fit to exercise the power, become the sole judges and final arbiters of the amount of business upon which they would impose the franchise tax herein provided for. It may be said that upon the suspicion or the detection of an error, the return might be sent back for correction, but finally it is the sworn return of the company that must control the action of the assessors. If upon suspicion and investigation it should be discovered that the agent of any corporation had intentionally made a false return, the state would be amply protected against the repetition of the offense by a conviction and punishment of the offender under the administration of the criminal law.

Our conclusion therefore is that the tax of 1899 should be assessed upon the return made by the company for that year and in the ratio of 14 to 116 for the business done upon the water, and of 50 to 114 for the business done by railroad. The gross receipts by water according to the return were $6482.42 and by railroad $420.10. Upon this basis, the tax should be computed upon 14-116 of $6,842.42 and 50-114 of $420.10 making a total of $1009.72. One and one-half per cent on this amount is $15.14.

By the agreed statement it is admitted that the defendant in its return of 1898, by an error, reported as the amount of business done in this state $7432.01, the total amount received from its whole line of business, whereas, in fact, the gross receipts for the business done in the state for that year under the pro rata rule already laid down were $935.05. The tax was assessed upon the erroneous return instead of the amended one. Under the stipulation that the court "is to determine the pro rata part of the gross earnings for the two said years upon which said company was legally subject to pay a tax " the tax for this year must be $1\frac{1}{2}\%$ of $935.05 or $14.03. Upon a further stipulation relating to costs, the entry must be

*Judgment for the state, for $29.17 without costs.*