Nichols, C. J.
In May 1918 the city of Cincinnati acting through and by the council of that city passed a certain ordinance wherein it provided that an annual tax should be charged upon all persons, firms and corporations pursuing any of the trades, professions, occupations, vocations and businesses therein named.
The occupations named were manufacturers of bottles and glassware articles, and osteopathic physicians.
These particular occupations were chosen, it is to be supposed, simply for the purpose of constituting the vehicle by which a test might be made of the right of a municipality to impose such charge or tax upon occupations generally.
After the ordinance became effective, a certain osteopathic physician, resident of Cincinnati, tendered to the city auditor the amount of the tax provided for in the ordinance, which the auditor refused to accept. Thereupon action in mandamus was instituted in this court by the city solicitor against the city auditor.
*222 This petition alleged that the city of Cincinnati acting under and in accordance with the provisions of Article XVIII of the Constitution has adopted a charter. By the terms of Section 1 of the charter it is provided that the city shall have all powers of local self-government and home rule, and all other powers possible- for a city to have under the constitution of Ohio.
Certain fundamental or basic considerations are necessary in the determination of this case.
The right to impose taxes, by a long line of decisions, both state and federal, is within the conceded powers of sovereignty. In truth, experience teaches us that the exercise of this power is the highest and most necessary attribute of government. Without it government must cease to exist among men, and as a substitute we would return to the primeval method of levying tribute by brute force.
In both the federal and state governments of the United States the exercise of this authority has been confided by written constitutions to the legislative departments.
In our own state it has been decided in numerous cases that this grant of power is conferred on the legislative branch of the state government by Section 1, Article II of the Constitution.
It has been likewise held that this authority is full, adequate and complete, limited only, if at all, by other sections of the same instrument.
The principle may be safely said to be established that the legislative department may enter and occupy any field of taxation, unless the consti *223 tution has expressly or by necessary implication forbidden it.
We must look to Article XII, which has to do with the general subject of finance and taxation, for any such limitation of power.
Section 1 of this article prohibits the levy of any poll tax and the requirement of service of any kind or character which shall be the subject of commutation in money.
Section 2 of the same article provides for the method and manner of levying taxes, being the well-known uniform-rule section, and has application to taxes on property only.
Section 7 of this article is a new product, and is in no sense a limitation of power, being rather a special grant, and has to do with taxation on inheritances.
Its incorporation in the constitution may be said to have been induced by the decision of this court in the case of State, ex rel., v. Ferris, Judge, 53 Ohio St., 314, and to make perfectly clear not so much that the general assembly might provide for the levy of taxes on the right to receive inheritance, but that such tax might be of a graduated or progressive type, and, furthermore, that an exemption of the smaller inheritances might be authorized.
Section 8 of the same article, providing for the taxation of incomes., for the same reason cannot be said to be a limitation of power, nor can it be said to be equivalent to a conclusion that without such express grant incomes might not be the subject of taxation. It is much more likely that the incorpora *224 tion of this new section by the constitutional convention of 1912 was occasioned by a desire on the part of its members that the method of levying taxes on incomes should be precisely, similar to taxation of inheritances, in so far as it might relate to graduation of rates and exemptions.
At this point it is proper to say that taxation of incomes or inheritances is not the imposition of direct taxes on property per se, but is rather in the nature of an excise tax.
This is now almost the universal conception of such method of taxation. The only departure from this view is to be found in the decision of the supreme court of the United States, Pollock v. Farmers’ Loan & Trust Co., 158 U. S., 601, the celebrated case in which the income tax sections of the Wilson tariff bill were held unconstitutional by a vote of five to four, the majority opinion holding that the tax was laid on property directly, the minority contending that the tax was indirect and more in the nature of an excise tax.
Section 10 of Article XII of the new Ohio Constitution declares that laws may be passed providing for excise and franchise taxes and for the imposition of taxes upon the production of coal, oil, gas and other minerals.
It is to be concluded that the incorporation of this new section in the constitution was to make certain the authority of the general assembly to levy tax on the specified minerals named, for certainly in view of the legislation and construction thereof by the supreme courts of both Ohio and the United States no express grant of power was *225 required in order to sustain either excise or franchise taxation.
A majority of this court are of the opinion that there is no constitutional limitation resting upon the authority of the general assembly to levy tax on property of. every kind and character, except that it must be uniform and according to its true value in money. Nor is there even this limitation on its power to provide for the levy of taxation on incomes, inheritances and franchises, including the imposition of excise taxes.
We are likewise of opinion that the power to levy taxes on these several subjects comes from the grant in Section 1, Article II, and that there was no necessity for the inclusion in the constitution of new Sections 7, 8 and 10, Article XII, except for the purpose of providing for the graduated method of levying.such taxes and for the permissive feature of exemption of the lesser inheritances and incomes.
Any and all uncertainty as to the power of the general assembly to levy an occupational tax has been removed by the express grant of power in the newly incorporated Section 10, Article XII of the Constitution.
A tax on occupations is an excise tax, and has been so recognized by the most eminent authority.
For instance, Judge Cooley, in the 7th edition, of his treatise on constitutional law, page 680, defines excises as “Taxes laid upon the manufacture, sale, or consumption of commodities within the country, Upon, licenses to pursue certain occupations, and upon corporate privileges.,”
*226 This definition was employed in the case of Maine v. Grand Trunk Ry. Co., 142 U. S., 217, by Mr. Justice Field, with the added comment that “it is used more frequently, in this country, in the latter sense than in any other.”
It was likewise employed in the case of Pollock v. Farmers’ Loan & Trust Co., supra.
It was reemployed by Mr. Justice Day in Flint v. Stone Tracy Co., and associated cases, 220 U. S., 107. These cases were actions to test the constitutionality of the federal corporation tax law-passed by congress in 1911.
The opinion by Judge Day in these cases clearly establishes the right of congress to levy a special tax on business under the general grant to congress by the federal constitution of the power to levy excise taxes.
That the power to exercise this form of taxation rests with the general assembly, both by general and special grant, there is no possible doubt.
An occupational tax is in no sense a tax upon property, but is well understood to be a tax on the , right to carry on trade or to transact business.
It is possible that the imposition of such taxes may in certain instances be oppressive, but the same general objection can be made to taxation in any form. We must ultimately depend on the fairness and good sense of the lawmaking power.
Chief Justice Marshall, in the famous case of M’Culloch v. Maryland, 4 Wheat., 428, observed: “The people of a State * * * give to their government a right of taxing themselves and their property, and as the exigencies of government cannot be limited, they prescribe no limits to the ex *227 ercise of this right, resting confidently on the interest of the legislator, and on the influence of the constituents over their representative, to guard them against its abuse.” '
Having concluded that the state, through the agency of the general assembly, may constitutionally impose an occupational tax, the next inquiry is: Can the city of Cincinnati, through the agency of its legislative body, exercise the same power ?
Whatever power the city of Cincinnati possesses in this respect comes in the first instance not from the general assembly but from the constitution itself. Section 3, Article XVIII, provides that municipalities shall have authority to exercise all powers of local self-government.
Ignoring for the moment the provision found in Section 13, Article XVIII, to the effect that laws may be passed to limit the power of municipalities to levy taxes for local purposes, etc., we find in Section 3, Article XVIII, as complete a grant of power as, the general assembly has received in Section 1, Article II. There can be no doubt that the grant of authority to exercise all powers of local government includes the power of taxation, for without this power local government in cities could not exist for a day. It is a known fact that the necessary expense incident to the maintenance of the government of a modern city transcends all other forms of governmental expense.
The constitution recognizing the necessity of this grant of power conferred it on municipalities, subjecting them only to the staying hand of the general assembly in respect to its limitation.
*228 It is not necessary for us now to determine the prohibitive force of the limitation feature of Section 13, Article XVIII — whether it could be invoked to prevent the levying by a city of an excise tax and by laws of an inhibitory character control the subjects of taxation available for municipalities, or whether the limitation contemplated simply the amount of the rate of taxation on property.
It is enough to say that the general assembly has not expressly limited the authority of municipalities to levy an occupational tax, nor has it impliedly limited such authority by invading the field on its own account.
It is possible, of course, that the interesting question whether both state and municipality may occupy the same field of taxation at the same time, may some day be presented to the courts for their determination.
An analogy can be found in the possibility of both state and nation levying an income tax. The present federal income tax bears heavily on our people, and yet, since our constitution authorizes the levying of an income tax for the purpose of raising state revenues, could the fact that the federal government has first occupied the field operate to preempt it and thus defeat the state in the exercise of its constitutional power in this respect?
It may be said in this connection that it is clearly to be implied from the constitution that municipalities are without power to levy an income or inheritance tax.
This implication necessarily arises from the language of Section 9, Article XII, where we find *229 mandatory provision to the effect that “not less than fifty per centum of the income and inheritance taxes that' may be collected by the state shall be returned to the city, village or township in which said income and inheritance tax originate.”
It would seem quite certain, then, that the state alone can initiate taxation of this character.
It is to be observed that no provision for any divisional participation is made in the constitution as to excise and franchise taxation, nor for taxes upon the production of mineral products. It does not follow, however, that the failure of the constitution to provide for such division would operate to render invalid an act of the general assembly imposing occupational taxation throughout the state, requiring a return by the state to the city, township or village where the tax originated of fifty per centum of the amount thereof.
Reverting to the question of the power of Cincinnati to levy occupational taxes it is our conclusion that an ordinance of that character is a valid exercise of its legislative power, and unless and until the state itself invades the field, or expressly interdicts the exercise of the power, the authority of the city of Cincinnati to utilize such subjects of taxation must be upheld.

Writ allowed.

Matthias, Johnson, Donahue, Wanamaker and Robinson, JJ., concur.
Jones, J., dissents from second and third propositions of the syllabus and from the judgment.