## INTERSTATE BUSINESS NOT SUBJECT TO THE EXCISE TAX.

Common Pleas Court of Franklin County.

STATE OF OHIO V. THE BUCKEYE PIPE LINE COMPANY.

Decided, May, 1913.

*Taxation—Pipe Line Companies and the Excise Tax—Only Interstate Business Subject to Assessment—Use of Receipts for the Purpose of Ascertaining Some Other Feature of the Business Subject to the Taxing Power of the State—Jurisdiction to Revise and Modify Excise Tax Returns—Section 5487, et seq.*

1. The state board of appraisers and assessors, having once made a determination as to the amount of gross receipts of a corporation subject to the excise tax, which amount has been certified to the state auditor and the tax levied thereon and paid, is without jurisdiction to thereafter reopen the matter and make a new and different determination as to the amount of the receipts of such corporation subject to the excise tax.

2. A pipe line company, doing both an interstate and an intrastate business, is liable for the state excise tax only on its receipts from Ohio business.

*U. G. Denman*, Attorney-General, for plaintiff.
*Kline, Tolles & Morley* and *Wheeler & Bentley*, contra.

BIGGER, J.

The action is brought by the Attorney-General in the name of the state. The petition states that the defendant is an Ohio corporation organized for the purpose of transporting petroleum and water through pipe lines in the state of Ohio, and that it has been engaged in that business since its organization in 1886, and that its lines of pipe lie wholly within the state of Ohio, extending into sixty-six counties of the state, and that it transports oil for hire for other persons and corporations, and for itself; that its pipe lines are connected with each other and are used in connection with a large number of tanks and other storage reservoirs and equipment necessary for carrying on its business;

that since the passage of an act by the General Assembly of the state of Ohio on March 19, 1896 (92 O. L., pp. 79 to 84, inclusive), the defendant has filed the reports required by said act and paid the taxes therein provided for, except as stated in the petition.

The petition states two causes of action. The first cause of action, in substance, alleges that the defendant had in accordance with the provisions of said act made a report that its gross earnings for the year preceding the 1st day of May, 1908, was the sum of $9,317,280.15; that the defendant had afterwards amended its report by filing another statement with the state auditor, showing that its gross receipts from business done within the state of Ohio was the sum of $2,217,311.02, but that the board of appraisers and assessors had ascertained and determined that its gross receipts for the year in question was the sum of $9,317,280.15 as first reported; that the auditor charged against the defendant in the nature of an excise tax one per cent. on the gross sum and demanded payment of the same; that the defendant did pay the sum of $22,173.11, leaving a balance due of $70,999.69, which it refused and still refuses to pay. This amount the Attorney-General seeks to recover on behalf of the state, together with a penalty of fifty per cent. thereon and interest amounting in all to the sum of $115,339.27.

The second cause of action states that the defendant made report in the year 1909 that its gross earnings for the year preceding the 1st day of May, 1909, was the sum of $1,917,723.04; that thereafter the board of appraisers and assessors caused an inspection of the books of the defendant to be made and thereby duly ascertained and determined that the gross earnings of the defendant for said year was the sum of $8,422,158.27; that upon this sum the Auditor of State charged against said defendant in the nature of an excise tax a sum ascertained by computing one per cent. on said sum of $8,422,158.27 and demanded payment of the same, but that the defendant refused and still refuses to pay the same, but did pay the sum of $19,177.23. It is stated that the auditor has demanded payment of the balance of $65,044.04 and a penalty of fifty per cent. thereon, or a total, including interest, of $99,810.07.

Wherefore, the plaintiff prays judgment for the sum of $215,-149.84.

To this petition the defendant answers that the defendant is a corporation organized under the laws of Ohio for the purpose of transporting petroleum through tubing and pipes in the state of Ohio, and that it has been since its organization in 1886, and still is, engaged in transporting oil through its lines extending through many of the counties of this state, and that it transports oil both for itself and for other persons, firms and corporations, and that in connection with its pipe lines it has and uses pumping stations, tanks and other storage reservoirs and equipment in carrying on its business. It admits that since the passage of the law in question, it has filed reports with the Auditor of State as provided in the act for each year, and that there has been collected from the defendant for each year an excise tax, the collections for the year 1908 and 1909 being as subsequently stated in the answer.

The defendant denies all the preliminary statements of the petition preceding the first cause of action stated, except as expressly admitted.

Answering the first cause of action the defendant says it admits that in the month of May, 1908, it filed with the Auditor of State a report under the oath of an officer of the defendant, giving certain facts as required by Section 2780-18 of Bates' Annotated Ohio Statutes, and that said report stated that the entire gross receipts of the defendant's business for the year next preceding the 1st day of May, 1908, amounted to the sum of $9,569,613.90. The defendant avers, however, that the report of its gross earnings in said amount was made under protest, and that said report had attached to it and as a part thereof the following, to-wit:

"This report is made under protest on the ground that the law under which it is made is an attempt to regulate commerce among the states. Approximately 95 per cent. of the gross receipts shown in this report are derived from the transportation of oil coming from or destined to points without the state of Ohio and said precentage is, therefore, wholly interstate commerce and not liable to taxation in the state of Ohio. See recent de-

cision in Supreme Court, U. S., *Galveston, Harrisburg & San Antonio Railway Company et al* v. *State of Texas,* No. 207, October Term, 1907, not reported. The company would be pleased to furnish any further information as to the facts above stated.''

The defendant admits it paid to the Auditor of State by way of an excise tax for the year next preceding May 1, 1908, the sum of $22,173.11 and no more; admits that demand has been made on it by the auditor for the payment of the amounts stated in the first cause of action, less interest and penalty, but avers such demand was not made until the 31st day of December, 1909; admits that the Auditor of State requested the Attorney-General to bring this action, and that the same is brought pursuant to such request. Further answering, the defendant denies each and every other allegation contained in the first cause of action.

For a further defense to the first cause of action the defendant says that its pipe lines are and were connected at various points with pipe line systems transporting oil in and through other states, and that they, together with such other pipe lines, formed a means for the transportation of oil from points upon defendant's line within Ohio to points outside the state, both east and west, and from points on other lines outside the state to points within the state of Ohio; that its lines connect with lines in the state of Indiana at the west boundary line of Ohio and at the east boundary line with lines in the state of Pennsylvania, thus forming a continuous through pipe line through which oil in large quantities is transported from points west of the state of Ohio to points east of the state, and passing through the lines of the defendant lying in the state of Ohio; that the revenue received by the defendant from such transportation of oil from points outside of the state to points within said state, and from points within said state to points in other states, and from points in western states to points in eastern states, where the oil passes through the state of Ohio in the lines of the defendant, has for many years constituted a very large portion of the total revenues derived by the defendant from its business, and that such business was and is under the Constitution and

laws of the United States interstate commerce. The defendant further says that its said system of pipe lines within the state of Ohio, comprising both real and personal property, is and during the years in question was assessed for taxation under the laws of the state of Ohio in the ordinary way, taxes being levied and collected thereon · in the various counties in which said property is located as in the case of other property situated within the state.

The defendant further says that, having filed the report and protest above stated with the Auditor of State for the year preceding the 1st of May, 1908, it requested the Auditor of State that it be given a hearing upon such protest prior to any determination of the amount of its gross earnings for said year, and that in pursuance of such request a hearing was fixed by the state board of appraisers and assessors for November 24, 1908, at which time the defendant appeared before said board through its attorney and submitted to said board an affidavit of its treasurer, which is set out in full in the answer, and in which the said treasurer stated the gross receipts derived from the transportation of interstate oil and the gross receipts derived from the transportation of oil not interstate; that the defendant protested against the assessment of an excise tax upon any amount of gross earnings except that which was derived from purely intrastate business, and which the affidavit of its treasurer showed to be the sum of $2,217,311.02, and submitted arguments that any tax assessed against the gross receipts of the defendant beyond this sum would be a tax upon interstate commerce, and, therefore, invalid; that no decision of the board was made at that time, but that the board later notified the defendant of a further hearing which was had on January 6, 1909, upon which date defendant again appeared before the board, and the matter was further considered by the board, and that thereupon the board fixed and determined that the entire gross receipts of the defendant for business done within the state of Ohio was the sum of $2,217,311.02 and certified the same to the Auditor of State, and that thereupon on the 7th day of January, 1909, the auditor collected from the defendant an excise

tax computed on said amount, and the defendant paid said tax in the sum of $22,173.11 and received therefor a receipt from the Auditor of State, which recited that the said amount was received in full of the excise tax charged against it for the year 1908. It is further stated that in order to verify the report of the defendant made for the year 1908 the Auditor of .State caused an examination to be made of the books of the defendant by a special examiner appointed by him, who, after such examination, reported the amount of the gross receipts of the defendant derived from transportation of both interstate and intrastate oil, finding that the entire gross receipts from both interstate and intrastate oil amounted to $9,317,311.02, and that its gross receipts other than that derived from purely interstate business was the sum of $1,964,917.27, and no more. The defendant says that, excluding the receipts from purely interstate business, its gross earnings for business done within the state amounted to only the sum of $1,964,917.27. The defendant, therefore, says it has paid in full the entire amount of the excise taxes lawfully chargeable to it for the year 1908.

Answering the second cause of action the defendant says it admits that in the month of May, 1909, it filed a report with the Auditor of State, showing that the gross receipts of the defendant for the year preceding the 1st day of May, 1909, for business done within the state of Ohio was the sum of $1,917,723.02. It admits that thereafter there was collected from it and that it paid to the auditor as an excise tax upon its gross receipts for said year the sum of $19,177.23. It admits that subsequent to such payment demand was made on it by the Auditor of State for the amount claimed in the second cause of action, less penalty and interest, payment of which was refused by the defendant, but avers that such demand was not made until the 31st day of December, 1909. It admits that the action is brought by the Attorney-General on demand of the Auditor of State and denies each and every averment of the. second cause of action, except as above expressly admitted.

Further answering the second cause of action the defendant adopts the allegations set forth in its answer to the first de-

fense with reference to its pipe line system and business and the taxes assessed and collected on its property, and further says that upon the filing of its report in May, 1909, the report was duly transmitted to the state board of appraisers and assessors, and that said board duly proceeded to ascertain and determine the amount of gross receipts of the defendant derived from business transacted by it in the state of Ohio and upon consideration thereof determined and fixed said amount at the sum of $1,917,723.02, and thereupon certified said amount to the Auditor of State as the amount of defendant's gross receipts upon which the auditor should collect from the defendant the excise tax provided by law; that thereupon in the month of October, 1909, the Auditor of State charged against the defendant the amount of $19,177.23 as the excise tax due from it for said year, and on November 15, 1909, collected from the defendant and the defendant paid to the auditor said sum and received a receipt reciting that the same was received in full of the tax for said year.

The defendant further says that for the purpose of verifying the defendant's report the Auditor of State caused an audit of the books of the defendant to be made by a special examiner who reported that he found the gross earnings of the defendant from intrastate business to be the sum of $1,810,134.08, being $107,154.27 less than the amount reported by the defendant. The defendant says that its gross receipts for the year preceding the 1st day of May, 1909, derived from intrastate business and excluding that derived from purely interstate business did not exceed the sum of $1,917,723.02, and that all amounts received by it from its business in excess of that sum were received for the transportation of oil coming from or destined to points outside the state of Ohio. The defendant, therefore, says that it has paid in full the lawful taxes charged against it under said law for the year 1909.

By leave of court the defendant filed an amendment to its answer in which it is stated that a majority of the state board of appraisers and assessors did, on December 31, 1909, hold a meeting, of which meeting the defendant had no notice or knowledge,

and that at said meeting a pretended finding was made by said board that this defendant had omitted a portion of the gross receipts of said company for the year preceding the 1st day of May, 1908, in the sum of $7,099,969.13, and thereupon proceeded to assess against said amount in penalties and taxes the sum of $106,499.53, which sum was by the board certified to the Auditor of State; that at said meeting the board also made a finding that the defendant had omitted a portion of its gross receipts for the year preceding the 1st day of May, 1909, in the sum of $6,504,-435.23, and thereupon proceeded to assess against said amount in taxes and penalties the sum of $97,566.06, which said sum was by said board duly certified to the Auditor of State, and avers that said pretended findings for the years 1908 and 1909, and the assessment and penalties thereon, were found and computed upon gross receipts of the defendant derived exclusively from interstate commerce business.

To this answer of the defendant as amended the state of Ohio, through the Attorney-General, has interposed a general demurrer, and this submission of the case is upon this demurrer.

The defendant claims upon the facts pleaded in its answer and amendment thereto, and which the demurrer admits to be true, that the assessment of this tax upon the receipts of the defendant derived from the transportation of oil to points within the state from other states, and from points within the state to other states, and from transportation through the state in the lines of the defendant, of oil from western states to eastern states, is, in effect, a burden upon interstate commerce and an attempt to regulate the same in contravention of the commerce clause of the Federal Constitution. The defendant further contends that the proper construction of the statute limits the imposition of the tax to receipts derived from the purely intrastate business, and that if the construction contended for by the state be put upon the statute that it is in violation of the commerce clause of the Federal Constitution and invalid.

 On behalf of the state it is claimed that the tax is what is denominated by the statute "in the nature of an excise tax" and not in any sense a tax upon property, and that the state has the

right to impose such a tax upon the defendant in the nature of a franchise tax, or a tax for the privilege of doing business, and that it is not an invasion of the domain of the federal government in its exclusive jurisdiction over and regulation of interstate commerce to measure the value of that franchise or privilege by taking the entire gross receipts of the defendant derived from both interstate and intrastate business as the basis for computing the tax. It is conceded on the part of the state that a tax measured by receipts is a tax on receipts, unless an intention is apparent to use the receipts as a means of ascertaining the value of some other taxable thing, and that a tax upon receipts derived from interstate commerce is a regulation of interstate commerce, unless such receipts are used to measure the value of a thing subject to the taxing power of the state.

The defendant also contends that the action of the state board of appraisers and assessors on January 6, 1909, fixing and certifying to the Auditor of State the sum of $2,217,311.02 for the year 1908, and its like action at its regular meeting in July, 1909, in fixing and certifying to the auditor the sum of $1,917,-723.02 for that year as the gross receipts of the defendant, subject to the assessment of the tax for those two years was final and conclusive upon the state, and that the action of the board taken on December 31, 1909, making a different and additional finding and certifying the same to the Auditor of State was without authority of law and void.

It is the contention of the Attorney-General on behalf of the state that while the state board of appraisers and assessors had power to determine all questions of fact entering into the determination of the amount of the gross receipts of the defendant subject to taxation, that upon questions of law the board was without power to finally decide and to conclude the state by its decision upon the law, it being admitted that its gross receipts including interstate business were several times greater than that upon which the tax was assessed and paid.

Was the finding and determination of the state board of appraisers and assessors on January 6, 1909, and its finding and determination in July, 1909, of the gross earnings of the de-

fendant subject to the imposition of this tax final and conclusive, or had the board a right subsequently upon December 31, 1909, and of which meeting the defendant had no notice or knowledge, to reverse the former ruling of the board and make the finding and determination which it did, largely increasing the tax assessed against the defendant for the two years in question? It is to be observed that there is here no element or charge of fraud or deceit on the part of the defendant by which its receipts were concealed from the taxing officers. On the contrary, it appears from the averments of the answer that as to both years it returned its gross receipts in a larger amount than they were found and determined to be by the agent of the Auditor of State appointed to examine its books.

It seems clear from the provisions of this act that the state board of appraisers and assessors exercises *quasi*-judicial powers. It is given power to hear and determine. Provision is made that any company or person interested shall have a right to appear before the board and be heard at any time after the meeting of the board on the first Monday in June and before the gross receipts are determined. The board is also expressly clothed with power and authority to review and correct its findings, but in the exercise of this power the board is limited by the provision that this may be done at any time before the certification to the Auditor of State of such amount as provided in Section 2780-21. The word "of," it seems clear, should be read "to" as under the provisions of Section 2880-21, there is no provision for any certification by the auditor of the amount found and determined as the gross receipts of such corporation. The principle of the maxim *expressio unius est exclusio alterius* is of frequent application in the construction of statutes. It is true that it is to be applied only where it appears to point to the legislative intent. It is a well established principle of law upon the subject of the right of taxing officers and boards to amend and correct an assessment·after it has been made and placed in the hands of the officer charged with its collection that they are without power or authority to do so, unless such power is expressly conferred by statute. Upon this subject the rule

is thus stated in *Am. & Eng. Encyc. of Law*, 2d Ed., Volume 27, at page 697:

"The assessing officers may reconsider and revise their opinions to values, deductions and other. matters involved in the assessment until the official entry of their determination. Like other officers or bodies possessing a judicial capacity, they have the competency to consult, resolve, and reconsider, and they are not bound by their conclusions until such conclusions have been promulgated by their authority. It is only this ultimate judgment officially pronounced that is unalterable. On the other hand, when the assessment has been completed and the roll deposited with the officer or board authorized to receive it, the assessors can make no material additions or corrections unless the power to do so is expressly conferred by statute. On being completed and returned the assessment roll becomes a record subject only to statutory alteration and review. And if the taxpayer on examining it is satisfied with his assessment and willing to accept the decision of the assessor as therein expressed he is entitled to assume that no change will be made and to act accordingly."

Many cases are cited in the foot-note in support of the text. If this be the rule, except where the statute expressly confers power to revise and modify, how much stronger is the case where, by express grant, the power to do so is limited by the statute itself to a period prior to the final certification of the finding and determination of the amount to the officer authorized to receive it and to make the levy and collection, and which, applying the maxim in question, denies to the board any power or authority to revise or modify its finding and determination after the certification to the Auditor of State.

The rule is thus stated in *Cyc.*, volume 37, at page 1067:

"After the completion and return of the assessment role, an assessor has no further control over it, and has no authority to alter or amend it, except as concerns the correction of mere informalities or clerical errors and except as to making the changes ordered by the board of equalization."

In the case of *People et al* v. *Forest et al*, 96 N. Y., 544, the court says with reference to the correction of assessments by assessing officers:

"The assessors speak to taxpayers through their completed rolls; thus and thus only register their judgment. What the property owner there finds he has a right to rely upon as in truth the judgment and determination of the officers. If they may change it, with little or no notice, to correspond with some unregistered judgment and opinion known only to themselves and so as not merely to correct a formal or non-substantial error but so as to increase valuations or add to liabilities there will be little or no safety to the taxpayer or of utility in the rights which the statute confers."

The syllabus in that case states the rule to be that:

"After the completion by assessors of an assessment roll, on the formal notice of that completion the assessors are without jurisdiction to change either the persons or the property assessed, or the adjudged valuation of the latter, except upon complaint of the party aggrieved."

This rule seems to be well settled, and I find no authority to the contrary. The cases cited in the brief on behalf of the state are not in point, as they only decide that the action of assessing officers is not to be controlled by their predecessors in office in making assessment in prior years. They were not cases of modification or change of assessment already made and certified. The cases cited are *Lee* v. *Sturges,* 46 O. S., 152; *Vicksburg, etc., Railroad Company* v. *Dennis,* 116 U. S., 665, and *Portland Hibernian Society* v. *Kelly,* 28 Ore., 197.

This rule that after assessing officers have finally determined the amount of the assessment and delivered the same to the officer whose duty it is to receive the same that their jurisdiction over the assessment is terminated, is one manifestly for the protection of the taxpayer. When the review and correction provided for by law have been completed the person subjected to the payment of the tax has a right to conclude that he may pay the tax assessed without being subjected to a further assessment for the same period on the same property or the exercise of the same right or privilege and to act upon that assumption. If in the case of such boards whose personnel changes at frequent intervals and without any notice or knowledge on the part of the taxpayer, but because of a change of view on the part of

the membership upon questions of law, the taxpayer may again be assessed for the exercise of the same privilege, there would seem to be little or no security to the taxpayer in the possession of a receipt in full for taxes. I am unable to see the force of the reasoning that, while their judgment upon the facts necessary to be considered by them was final and conclusive, their judgment upon the law which must control them is not to be given that effect. The case of *State, ex rel,* v. *Railroad Company,* 97 Mo., 348, does not in my opinion support this contention. In that case the state board was given power and jurisdiction to assess toll bridges. They assessed a bridge as a toll bridge which was not a toll bridge, and the decision was that as to such bridges the state board had no jurisdiction and their judgment that it was a toll bridge was without force or legal effect. The state board had no jurisdiction of the subject-matter. It was clearly beyond the jurisdiction of the board, but in this case there is no question of the jurisdiction of the board. It was the board, and under a claim of jurisdiction, which made the finding which it is sought to enforce by this action. If it had jurisdiction on December 31, 1909, to decide what the law was, it had jurisdiction to decide what the law was in January and July of 1909. The New York court in the case *In re Hermance,* 71 N. Y., 481, decided that:

"The provision of the act to extend the powers of boards of supervisors, etc., which authorizes boards of supervisors on the recommendation of the county court to correct any manifest clerical or other errors in any assessment or return was not intended to and does not subject the assessment to review or permit the correction of all errors, but simply all those which are manifest, *i. e.,* apparent by an examination of the assessment roll or return, needing no extrinsic evidence to make them clear, and which are also clerical, or other errors in assessments or returns, *i. e.,* some error of form in the assessment roll not an error of the assessors in making the assessment nor any substantial error of judgment or of law."

The court, it will be observed, was of opinion that the power to correct substantial errors, either of fact or of law, did not exist when not given by the statute.

It is a well established principle of law that statutes imposing taxes are to be strictly construed in favor of the citizen on whom the burden is sought to be imposed. *27 Am. & Eng. Encyc. of Law,* page 618; *City of Cincinnati* v. *Connor,* 55 O. S., 82. At page 91, Judge Williams says:

"The rule generally prevails that independent of any legislative requirement on the subject, statutes imposing taxes and public burdens of that nature are to be strictly construed, and where there is ambiguity which raises a doubt as to the legislative intent, that doubt must be resolved in favor of the subject or citizen on whom the burden is sought to be imposed. We have an express statutory requirement that proceedings with respect to assessments of all kinds shall be strictly construed in favor of the owner of the property assessed as to the limitations on the amount of the assessment."

Ample provision has been made by statute in this state to protect the citizen against the imposition and collection of illegal taxes and assessments, and likewise ample provision has been made for the correction of assessments and taxes in favor of the public by conferring power upon auditors and boards of review to correct and add to the taxable valuation of property returned for taxation and to place omitted property upon the tax duplicate, but the exercise of such power depends upon statutory grant and is limited thereby in its exercise. As I understand the law upon the subject, and in the light of the principles and decisions above stated, after the state board of appraisers and assessors had exercised its judgment in the matter and had determined the amount of the gross receipts of the defendant subject to taxation for the years 1908 and 1909 and certified the same to the Auditor of State who levied the tax thereon in accordance with the statute, and the same had been paid by the defendant, that the board was without jurisdiction to meet in December, 1909, and without notice to the defendant make a new finding and determination which greatly increased the amount of the tax. It is not a question of the power of the state to provide for modification and correction of returns and assessments. When such provision is made by law the citizen or subject is bound to take notice of the law on the subject, but when

no such provision has been made, or when the exercise of the power of modification and review has been limited by statute as in this case, the person who is taxed has a right to assume that what the law has made final and not subject after a given time to modification or change will be final, and act accordingly. I am, therefore, of opinion that the finding and determination of the board in January and July of 1909 as to the amount of the gross receipts of the defendant subject to taxation was final, and that their attempted exercise of jurisdiction to change and increase the amount of the defendant's gross earnings subject to the levy of this tax in December of 1909, was without authority of law and void.

Whether this conclusion be correct or not, I am however of opinion that the action of the state board of appraisers and assessors taken in January and July of 1909 finding and determining that the tax in question should be levied only on the receipts derived from purely intrastate business was correct, and that if the construction is to be put upon this statute which evidently was placed upon it by the board in December of 1909, that it would render the statute unconstitutional to that extent at least as being in derogation of the power of Congress to regulate and control interstate commence. Upon this question we must, of course, be controlled by the decisions of the United States Supreme Court, if it has decided the principle or principles involved under the facts disclosed by the answer in this case. The defendant bases its contention largely upon the decision of the United States Supreme Court in the case of *Galveston, etc., Railway Company* v. *Texas*, 210 U. S., 217, and decisions of that court since that confirming the principle decided in that case, while the state relies principally upon the case of *Maine* v. *Grand Trunk Railway Company*, 142 U. S., 217:

In the Texas case the court decided that:

"The statute of Texas of April 17, 1905, C. 141, imposing a tax upon railroad companies equal to one per cent. of their gross earnings is as to those companies whose receipts include receipts from interstate business a burden on interstate commerce, and, as such, violative of the commerce clause of the federal Constitution. *Philadelphia & Southern Mail Steamship Company* v

*Pennsylvania*, 122 U. S., 326, followed.  *Maine* v. *Grand Trunk Railway Company*, 142 U. S., 217, distinguished, and held that the latter case did not overrule the former.  Neither the state courts nor the Legislature by giving a tax a particular name or by the use of some form of words can take away the duty of this court to consider the nature and effect of a tax, and if it bears upon interstate commerce so directly as to amount to a regulation, it can not be saved by name or form."

The action was brought against certain railroads to recover taxes and penalties.  The decision of the state courts was adverse to the railroads and the case was taken to the Supreme Court of the United States on the constitutional question involved.  The act under which the tax was levied was entitled: "an act imposing a tax upon railroad corporations  *  *  *  and other corporations  *  *  *  owning  *  *  *  or controlling any line of railroad in this state  *  *  *  equal to one per cent. of their gross receipts  *  *  *  and repealing the existing tax on the gross passenger earnings of railroads."  The statute required a report under oath of the gross receipts of such line of railroad from every source whatever for the year ending on the 30th day of June last preceding, and the tax was to be collected on the gross receipts so reported.  The lines of the railroads concerned in that case were wholly within the state of Texas, but they connected with other lines, and in some instances much the larger part of their gross receipts were derived from the carriage of passengers and freight coming from or destined to points without the state.  In that case as in this the state relied upon the case of *Maine* v. *Grand Trunk Railway Company*, 142 U. S., 217.

In the Maine case the court decided that:

"A state statute which requires every corporation, person or association operating a railroad within the state to pay an annual tax for the privilege of exercising its franchises therein to be determined by the amount of its gross transportation receipts, and further provides that when applied to a railroad lying partly within and partly without the state, or to one operated as a part of a line or system extending beyond the state, the tax shall be equal to the proportion of the gross receipts in the state to be ascertained in the manner provided by the stat-

ute, does not conflict with the Constitution of the United States, and the tax thereby imposed upon a foreign corporation operating a line of railway partly within and partly without the state is one within the power of the state to levy.''

After a careful consideration of the Texas case and the cases since decided by the United States Supreme Court in which the principles announced and decided in that case have been approved, I have reached the conclusion that it is a deadly parallel to the case at bar in so far as the right of the state to collect the tax here sought to be collected is concerned. It will be observed that the court in the Texas case announced the principle that it was immaterial what the tax was called. It was decided that it was its operation and effect which must be considered in determining whether it is a burden upon and regulation of interstate commerce. So that it would not seem to be a consideration of much, if any, importance that the tax involved in this case is denominated by the statute ''in the nature of an excise tax.'' The question is, what is its operation and effect? In the Texas case and in this case the lines in question were wholly within the boundaries of the state. In that case as in this the defendants were common carriers, and the larger part of the gross receipts of the companies were derived in the one case from the carriage of passengers coming from or destined to points without the state and in the other from the transportation of oil coming from or destined to points without the state, and the entire tax sought to be collected in this case is computed upon the receipts derived from this interstate business. In the Texas case as in this case there was an attempt to avoid a direct imposition of the tax upon the gross receipts by a recital that the tax was to be equal to one per cent. of the gross receipts. In this case it is denominated ''in the nature of an excise tax'' but to be computed at one per cent. upon the gross receipts of the defendant from both interstate and intrastate business. The question, therefore, is: how are we to distinguish in operation and effect the tax levied here upon this interstate business from that levied in the Texas case? If the tax levied and sought to be collected in the Texas case was a burden upon interstate com-

merce, there is no escape from the conclusion that the tax in this case levied in the same amount and computed upon the same basis, to-wit: both interstate and intrastate business is a burden upon and regulation of interstate commerce.

In the case of *Philadelphia Steamship Company* v. *Pennsylvania,* 122 U..S., 326, which was followed and approved in the Texas case, the tax was levied upon the gross receipts of the company. That case differed from the case at bar and the Texas case in that the only business transacted by the steamship company was interstate in character and its gross receipts were, therefore, derived from interstate business. But it is to be remembered that in this case the defendant has paid the tax upon its intrastate business, and the entire amount to be recovered is sought to be imposed upon its interstate business. It might in the absence of the decision in the Texas case have been argued that this distinguished the Philadelphia Steamship case in principle from the case at bar where the statute provides that the tax is to be computed upon both the interstate and intrastate business. The Supreme Court of the United States, however, was manifestly convinced that in the usual course of business such a tax would not fall solely as a burden upon the intrastate business to the exclusion of the interstate business, but that in the natural course of business interstate business would be compelled to share in the burden, and this would plainly and inevitably be the result where four-fifths of the entire gross receipts were derived from interstate business.

It appears from the opinion in the Texas case that there was an attempt to distinguish the Maine case from the principles involved in the decision in the Texas case. It appeared in the Maine case that only the buildings and its lands and fixtures outside of the right-of-way were taxed locally, and Justice Holmes says in the opinion in the Texas case that this local tax, together with the tax denominated an excise tax, was to be in lieu of all taxes, and that the two taxes might be denominated a commutation tax. In the Texas case the court assumed, it is stated, from the judgment of the state court and the argument of counsel, that the property of the railroad company was taxed as a going

concern by the state in addition to the tax brought in question in that case.   It is sought by the state in this case to sustain the tax upon the principle that the state has not levied a tax upon the defendant which includes the full value of its property as a going concern, but the United States Supreme Court in the case of *Myer, Auditor,* v. *Wells Fargo Company,* 223 U. S., 298, in construing the statute of Oklahoma, which contained the same language substantially as the Ohio statute with reference to the taxation of the tangible property of the company, applied the doctrine of the Texas case.   The language of the Oklahoma statute was that the tax levied upon the gross revenue of the corporation should be in addition to the tax levied and collected upon an *ad valorem* basis upon the property and assets of the corporation.   The language of the Ohio statute is that "nothing contained in this act shall exempt or relieve   *   *   *   pipe line   *   *   *   companies from the assessment and taxation of their tangible property in the manner authorized and provided by law."   The *ad valorem* basis is also the rule of assessment of property in Ohio.   The decision in the Oklahoma case taken in conjunction with the decision in the Texas case seems to be absolutely controlling and decisive of the question at issue in this case.   Considering the Texas and the Oklahoma cases together it seems that the principle is established by these decisions of the United States Supreme Court that where a common carrier has been taxed upon all its tangible property in the state on an *ad valorem* basis as other property is taxed, that the levy of an additional tax upon or measured solely by its gross earnings derived from both interstate and intrastate business is in contravention of the commerce clause of the federal Constitution and void.   The Maine case is distinguishable from this case in that it appeared in the Maine case that the right-of-way and rolling stock of the company was not otherwise taxed than it was taxed by the statute in question in that case.   In this case, however, and the Texas and Oklahoma cases, all the tangible property of the company was also taxed as other property is taxed by the state, and in such case the decisions seem to be controlling that a tax computed upon the gross receipts derived

from both sources can not be sustained. In this case the defendant has been taxed upon all its tangible property within the state, as other property is taxed. It has also been taxed under the Cole law upon the gross receipts derived from its intrastate business and has paid the same. It is now sought to collect a tax based solely upon the receipts derived from interstate business, and in the light of the decisions of the United States Supreme Court above referred to, I am of opinion that to give the statute the construction contended for would be to render it unconstitutional as being in derogation of the commerce clause of the federal Constitution. It does not seem necessary for the court to decide whether the statute can be so construed or not, for if the above conclusion be correct it must either be so construed or it will be unconstitutional, and whichever view may be taken of it, the facts pleaded in the answer state a good defense to the state's action, if established by proof.

For the above reasons the demurrer of the state to the answer of the defendant as amended is overruled.